MATTER OF YANEZ-JAQUEZ

In Deportation Proceedings

A-10532657

*Decided by Board January 16, 1970*

(1) A conviction of passing a forged instrument which resulted in a suspended sentence and probation under the Texas Code of Criminal Procedure adopted effective January 1, 1966, is a final conviction upon which to predicate a ground of deportation under section 241(a)(4), Immigration and Nationality Act, as amended.

(2) A permanent resident alien, fully aware that his Form I-151 was required for readmission, who, without such Form willfully and deliberately departed to Mexico for a short visit (the purpose of which was characterized by criminal intent) thereafter returning to the United States by crossing the dry bed of the Rio Grande approximately one-half mile from the Service port of entry, thereby attempting to enter without inspection, made upon his return an entry upon which to predicate a ground of deportation [*Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963), inapplicable].*

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251]—Convicted of a crime involving moral turpitude, to wit, passing a forged instrument (1968), committed within five years after entry (1967), and sentenced to confinement therefor in a prison or corrective institution for a year or more.

ON BEHALF OF RESPONDENT:
Albert Armendariz, Esquire
543 Magoffin Avenue
El Paso, Texas 79901

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Bernabe Q. Maldonado
Trial Attorney
(Brief filed)

This case is before us on appeal from a special inquiry officer's order of June 16, 1969, directing that the respondent be deported from the United States to Mexico on the charge contained in the order to show cause. The appeal will be dismissed.

---

* Overruled. See 440 F.2d 701 (1971).

The record relates to a 24-year-old unmarried male alien, a native and citizen of Mexico, who was admitted to the United States for permanent residence on July 19, 1955. He was assaulted and robbed in Juarez, Mexico, on or about May 4 or 5, 1963, following which he returned to his home in El Paso. The next day, he armed himself with an ice pick and planned to go back to Juarez to confront the persons who had robbed him. His mother tried to dissuade him, and refused to let him have his resident alien border crossing identification card (Form I-151), which is used in lieu of a visa to reenter the United States after a temporary visit abroad, with certain exceptions not here pertinent.

The respondent, on arriving in Juarez, Mexico, did not immediately locate his assailants. He testified that because of the presence in the area of numerous Mexican police, he crossed the dry bed of the Rio Grande to the American side, where he was sitting on the river bank watching for his assailants. See Exhibit 4. United States border patrol officers, who patrol the area along the river bank, noticed the respondent and took him to the United States Immigration Service port of entry about half a mile away. He claimed he was a lawful permanent resident of the United States. His mother brought his I-151 to the Immigration Office, and satisfied the officials there that the respondent had been lawfully admitted to this country for permanent residence. He was then admitted, but was forthwith taken into custody by El Paso police for possession of the ice pick.

On January 11, 1968, in the Fourth Judicial Court, El Paso, Texas, the respondent was convicted of the offense of passing a forged instrument, which is a crime involving moral turpitude. The respondent was given a two-year prison sentence, suspended, and was placed on adult probation for a period of two years. On June 7, 1968, an order was issued by the same court revoking the probation and ordering the respondent to serve two years in the state Penitentiary, beginning February 23, 1968. He is now serving that sentence.[1]

The respondent's first contention is that the conviction on which the Service relies is not of sufficient finality to support an order of deportation. In support of this proposition, he relies on

---

[1] The record of the respondent's conviction (Ex. 2) shows that the conditions of his probation were that he would commit no offense against the laws of the State of Texas, any other State, or the United States, and that would make restitution; and that the reason for the revocation of his probation was that on February 23, 1968, the respondent had passed another forged instrument.

the precedent decision rendered by the Attorney General in *Matter of L—R—*, 7 I. & N. Dec. 318 (1957). We, however, reject this argument, finding that the decision under reference is not controlling here, for several reasons.

In the first place, the Texas Code of Criminal Procedure was revised by the legislature in 1965 and a new Code of Criminal Procedure was adopted effective January 1, 1966; and the new code repealed all prior laws relating to criminal procedure, with certain exceptions which do not include the adult probation and parole law of 1967 or the suspended sentence law of 1913, which laws are involved in *Matter of L—R—*, *ante*. Second, under the new code, on facts substantially the same as those involved here, we upheld the special inquiry officer's order of deportation, for reasons which are equally applicable here.[2] Third, any doubts which might arise on this point are completely dispelled by the revocation of the respondent's probation and the requirement for his incarceration in accordance with the original sentence.

The respondent's second contention, which we likewise reject, is that while the crime which serves as the basis for the respondent's deportation was committed within five years after his return to the United States on May 6, 1963, conviction therefor did not occur until after the expiration of five years from that date. We have previously ruled that section 241(a)(4) of the Immigration and Nationality Act renders deportable an alien who commits a crime involving moral turpitude within five years after entry whether or not the conviction for such a crime occurs within the five-year period.[3] The rationale of that decision is clearly dispositive of all points raised by respondent in support of his arguments to the contrary in this case. Further discussion of this aspect of the case is unnecessary.

We also find wanting the respondent's final contention that he did not make an "entry" into the United States on May 6, 1963 within the contemplation of the decision of the Supreme Court in the case of *Rosenberg v. Fleuti*, 374 U.S. 449 (1963). The evidence of record, as hereinbefore summarized, convinces us clearly and unequivocally, that on May 6, 1963, the respondent was in Juarez, Mexico, for a period of one and a half to two hours and thereafter returned to the United States within the city limits of El Paso, Texas, by way of crossing the Rio Grande at a point about one half mile west of the Sante Fe Street Bridge. The evi-

---

[2] *Matter of Gonzalez De Lara*, 12 I. & N. Dec. 806 (1968).

[3] *Matter of A—*, 6 I. & N. Dec. 684 (1955).

dence of record also definitely demonstrates that the respondent was fully aware that his Form I-151 was required for his readmission into the United States as a returning resident; that by going to Juarez from El Paso on May 6, 1963, the respondent was acting against the wishes of his mother who had taken his Form I-151 from him; and that he thereby willfully and deliberately subjected himself to the hazards of exclusion upon his return to the United States on that date. The record further reflects, without any shadow of a doubt, that the purpose of the respondent's visit to Juarez on the date in question was to get back from his assailants the watch, which they had stolen from him the previous day, by means of an aggravated assault, if necessary, with a deadly weapon, to wit, an ice pick.[4] Finally, in this connection, the circumstances surrounding the respondent's visit to Juarez on May 6, 1963, and his return to the United States thereafter, lead to the inescapable conclusion that, at the time in question, he was attempting to enter the United States without inspection, thereby rendering the *Fleuti* decision, *ante*, inapplicable in his case.[5]

Accordingly, and in view of the foregoing, we conclude that the decision of the special inquiry officer should be affirmed. Discretionary relief in the respondent's case is not available.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

---

ee *Matter of Scherbank*, 10 I. & N. Dec. 522 (BIA, 1964).
*Matter of Kolk*, 11 I. & N. Dec. 103 (BIA, 1965).