# In re Cristobal PEREZ, Respondent

## File A91 875 147 - Huntsville

*Decided May 12, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Pursuant to section 240A(d)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(d)(1) (Supp. II 1996), continuous residence or physical presence for cancellation of removal purposes is deemed to end on the date that a qualifying offense has been committed.

(2) The period of continuous residence required for relief under section 240A(a) commences when the alien has been admitted in any status, which includes admission as a temporary resident.

(3) An offense described in section 240A(d)(1) is deemed to end continuous residence or physical presence for cancellation of removal purposes as of the date of its commission, even if the offense was committed prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546.

Isaias D. Torres, Esquire, Houston, Texas, for respondent

John W. McPhail, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, JONES, GRANT, and SCIALABBA, Board Members. Dissenting Opinion: GUENDELSBERGER, Board Member, joined by SCHMIDT, Chairman; VILLAGELIU and ROSENBERG, Board Members.

FILPPU, Board Member:

We have jurisdiction over this timely appeal pursuant to 8 C.F.R. § 3.1(b) (1999). The respondent has appealed the Immigration Judge's October 29, 1997, oral decision finding that he is removable on the basis of his conviction for a controlled substance violation pursuant to section 237(a)(2)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(B)(i) (Supp. II 1996), and pretermitting his application for cancellation of removal pursuant to section 240A(a) of the Act, 8 U.S.C. §

1229b(a) (Supp. II 1996). Removability is not an issue on appeal. The respondent contends that the Immigration Judge erred in finding him statutorily ineligible to apply for cancellation of removal on the ground that the required period of continuous residence was terminated when he committed the controlled substance offense. Our review is de novo with regard to the issue on appeal. *Matter of Burbano*, 20 I&N Dec. 872 (BIA 1994). The appeal will be dismissed.

## I. ISSUE PRESENTED

The issue in this case is whether the "stop-time" rule of section 240A(d)(1) of the Act operates to terminate the period of continuous residence required for cancellation of removal under section 240A(a) as of the date that the respondent *committed* his offense.

## II. FACTUAL BACKGROUND

In removal proceedings commenced on September 26, 1997, the respondent admitted, through his counsel, each of the factual allegations in the Notice to Appear (Form I-862). Specifically, the respondent stated that he is a native and citizen of El Salvador, that he was first admitted as a temporary resident on September 21, 1989, and that his status was subsequently adjusted to that of a lawful permanent resident on December 7, 1990. The respondent further admitted that he was convicted on July 11, 1997, in the 184th District Court of Harris County, Texas, of possession of cocaine, and that this offense was committed on or about August 4, 1992.[1] The respondent conceded that he was removable as charged under section 237(a)(2)(B)(i) of the Act on the basis of this conviction.

## III. THE RESPONDENT'S RETROACTIVITY ARGUMENT

The respondent's position on appeal is that the presumption against the retroactive effect of statutes stated by the Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244 (1994), is applicable in this case. The respon-

---

[1]We note that the dates provided by the Immigration and Naturalization Service in its brief on appeal for each of these events are inexplicably inconsistent with those alleged by the Service on the continuation page (Form I-831) to the Notice to Appear (Form I-862). For the purposes of this decision, we have used the dates alleged on the Form I-831, which were admitted to by the respondent at his October 29, 1997, hearing.

dent contends that, because he committed his drug offense prior to the passage of section 240A of the Act, that section's rules limiting eligibility for relief from removal should not be applied to him. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 304(a)(3), 110 Stat. 3009-546, 3009-595 ("IIRIRA") (codified at 8 U.S.C. § 1229b).

We first note that the relief of cancellation of removal is both discretionary and prospective in nature. Section 240A of the Act therefore does not impair a substantive right to relief that was in place prior to its enactment. When assessing statutory eligibility or discretionary merit for a grant of cancellation of removal, we must necessarily look at a variety of antecedent events, including events that are both favorable and unfavorable to the alien. An alien's past criminal conduct may well impact on the operation of the statute. But it does so only to the extent of defining the Attorney General's present authority to grant discretionary relief to removable aliens, or of informing as to the exercise of discretion. We therefore do not find that applying section 240A would have an impermissible "retroactive effect" as contemplated in *Landgraf*.

In any event, where Congress has expressly prescribed the reach of the new legislation, there is no need to resort to the judicial default rules set forth in *Landgraf*. We find that Congress has provided specific direction on the scope of applicability of the section 240A rules governing the relief of cancellation of removal. The effective date provisions of the legislation implementing the new procedures provide, with certain exceptions not applicable here, that section 240A applies to aliens unless they are currently in deportation or exclusion proceedings. *See* IIRIRA §§ 304(c)(2), 110 Stat. at 3009-597; 309(c)(1), 110 Stat. at 3009-625. The respondent is not in deportation or exclusion proceedings. He is in removal proceedings commenced after the April 1, 1997, effective date that the IIRIRA established for such proceedings. Consequently, the section 240A rules apply.

## IV. THE STATUTORY REQUIREMENTS FOR RELIEF
## UNDER SECTION 240A(a)

Since the respondent's eligibility for relief is controlled by the rules stated in section 240A of the Act, we must address whether the Immigration Judge properly applied these rules when he pretermitted the respondent's application for section 240A(a) cancellation of removal.

Section 240A(a) provides that a lawful permanent resident may seek cancellation of removal if the statutory prerequisites for that relief have been satisfied. The prerequisites for section 240A(a) relief are that the alien

(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

(2) has resided in the United States continuously for 7 years after having been admitted in any status, and

(3) has not been convicted of any aggravated felony.

The respondent was admitted for permanent residence on December 7, 1990, and therefore meets the first requirement of the statute.[2] We will not address the question whether the respondent meets the third requirement for relief because there is no documentary evidence relating to the respondent's conviction in the record. Therefore, we confine our inquiry to the remaining issue of whether the Immigration Judge correctly determined that the respondent had not satisfied the second requirement of 7 years of continuous residence after having been admitted in any status. The respondent *committed* his criminal offense before he accrued 7 years of residence. However, he was *convicted* of that offense nearly 8 years after his admission as a temporary resident.

## V. UNDER THE NATURAL AND STRAIGHTFORWARD READING OF SECTION 240A(d)(1), TIME CEASES TO ACCRUE ON THE DATE AN OFFENSE IS COMMITTED

The commencement of the period of continuous residence is defined in section 240A(a)(2) of the Act as the date when the respondent has been "admitted in any status." For the purpose of triggering the accrual of the 7 years of continuous residence required under section 240A(a)(2), we interpret admission in "any status" to include admission as a temporary resident. The respondent was first admitted in "any status," and continuous residence thus began to accrue, when he was admitted as a temporary resident on September 21, 1989.

The termination of continuous residence is defined by the special rule at section 240A(d)(1), which provides as follows:

For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 239(a) or when the alien *has committed* an offense referred to in section 212(a)(2) that renders the alien inadmissible to the United States under section 212(a)(2) or removable from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest. (Emphasis added.)

---

[2]In its brief on appeal, the Service misreads the statute as requiring continuous residence in the United States for a period of 5 years as a lawful permanent resident prior to the commission of a criminal offense. Section 240A(a)(1), requiring admission for permanent residence for not less than 5 years, does not state a requirement for continuous residence or physical presence and therefore does not trigger the application of section 240A(d)(1). The continuous residence requirement of section 240A(a)(2) is the provision at issue here.

Applying section 240A(d)(1) of the Act, the Immigration Judge determined that the respondent's period of continuous residence ended on August 4, 1992, the date he committed his offense, and that he consequently had less than the required 7 years of continuous residence. We find that the Immigration Judge was correct in applying the commission date as the date that continuous residence terminated.

The natural and straightforward reading of section 240(A)(d)(1) indicates that continuous residence or physical presence is deemed to end at the point when the alien "has committed" one of the designated offenses, i.e., one that is "referred to in section 212(a)(2) that renders the alien inadmissible to the United States under section 212(a)(2) or removable from the United States under section 237(a)(2) or 237(a)(4)." Section 240A(d)(1) of the Act.

The date that criminal misconduct is committed is the critical point in time when calculating the statutorily required period of time under section 240A(d)(1). The subsequent "renders" clause does not impose a separate temporal requirement. Rather, it is a restrictive clause which modifies the word "offense" by limiting and defining the types of offenses which cut off the accrual of further time as of the date of their commission. Thus, it implicitly requires that the steps necessary to "render" an alien inadmissible or removable shall have occurred before the offense qualifies for section 240A(d)(1) purposes. However, the statute does not identify the date that the final step for inadmissibility or removability occurs as the date that the further accrual of time terminates. To the contrary, it clearly defines the terminating point to be the time when "the alien has committed [the] offense."

In the instant case, the respondent was ultimately "rendered" deportable under section 237(a)(2)(B)(i) by his conviction for an offense that is referred to in section 212(a)(2)(A)(i)(II) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(II) (1994 & Supp. II 1996). Hence, his conviction placed his offense within those specified in section 240A(d)(1) for purposes of terminating continuous residence. However, once it was determined that the offense *was* one of those qualifying offenses, the statute set the date when the offense was "committed" as the point in time when his continuous residence ended.

It would strain our reading of section 240A(d)(1) to interpret the statute as permitting any date to be used for calculating the period of continuous residence or presence other than the date the offense was committed. In determining Congress' intent, we should not read a statute in a tortuous manner in search of ambiguity when the natural and straightforward reading leads to no anomalous or absurd result.

In any event, to the extent that a strained reading of section 240A(d)(1) suggests ambiguity when it is read in isolation, we find that it is readily resolved when interpreted in the context of section 240A as a whole, and by a common sense reading of the statute. Any possible ambiguity disappears

by simply recognizing that the word "renders" is implicitly modified by a single word, such as "subsequently," or "ultimately," in those situations where the commission of the crime does not itself render an alien immediately removable. Thus, in a case such as the one now before us, time stops accruing "when the alien has committed an offense that [subsequently] renders the alien inadmissible . . . or removable."

## VI. SECTION 240A(d)(1) MUST BE INTERPRETED IN THE CONTEXT OF SECTION 240A AS A WHOLE

Assigning the phrase "has committed" its ordinary and natural meaning gains support when those words are viewed in the context of the structure of section 240A as a whole. The Supreme Court has noted that if an ambiguity is perceived when a provision is read in isolation, it is often clarified when it is interpreted in the context of the remainder of the statutory scheme. *Bailey v. United States*, 516 U.S. 137, 146 (1995).

Reviewing the text of section 240A as a whole, it is apparent that when Congress intends a conviction to control eligibility for cancellation of removal, it has expressly said so. For example, cancellation of removal for a lawful permanent resident is conditioned on the fact that the alien "has not been *convicted* of any aggravated felony." Section 240A(a)(3) of the Act (emphasis added). Cancellation of removal for an alien who is not a permanent resident also requires that the alien "has not been *convicted* of an offense under section 212(a)(2), 237(a)(2), or 237(a)(3)." Section 240A(b)(1)(C) of the Act (emphasis added). Congress again used the word "convicted" in its special rule for a battered spouse or child, conditioning relief on a showing that the alien "has not been *convicted* of an aggravated felony." Section 240A(b)(2)(D) of the Act (emphasis added).

It is significant that Congress did not use the word "convicted" in section 240A(d)(1) of the Act. Rather, it chose the word "*committed*" for the rule governing the calculation of continuous residence and physical presence. Congress used the separate terms "convicted" and "committed" within section 240A itself, so we must assume that it intended each term to have a "particular, nonsuperfluous meaning." *Bailey v. United States, supra*, at 146.

Further, this distinction between the commission and the conviction of offenses occurs repeatedly throughout the Act. The difference in these terms continues to be evident in the amendments to the Act made by the IIRIRA, and by other amendments, both before and after the enactment of the IIRIRA, which were made by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), and the Nicaraguan and Central American Relief Act of 1997, Pub. L. No. 105-100, tit. II, 111 Stat. 2193, *amended by* Pub. L. No. 105-139, 111 Stat. 2644

(1997) ("NACARA").[3]

For example, conviction of a crime involving moral turpitude committed within a statutorily defined period has long been a ground for deportation. The current provision is found in section 237(a)(2)(A)(i) of the Act and provides, in part, that an alien who "is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission" is deportable. Similar statutory provisions were formerly found at section 241(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1251(a)(2)(A)(i)(I) (1994), section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(4) (1988), and section 19(a) of the Immigration Act of February 5, 1917, 39 Stat. 874. It is well established that this ground of deportation arises from the *commission* of the offense within the 5-year period irrespective of whether or not the *conviction* for the offense occurs within the 5 years. *See Matter of A-*, 6 I&N Dec. 684, 687 (BIA 1955); *Matter of Yanez-Jaquez,* 13 I&N Dec. 449, 451 (BIA 1970).

In view of the distinctions which Congress has made between the commission of an offense and a conviction under the immigration laws, we find it appropriate to heed Congress' choice in construing the language of the statute.

## VII. THE LEGISLATIVE HISTORY DOES NOT COMPEL A CONTRARY READING

It is appropriate to look to legislative history for guidance in discerning legislative intent. In this case, the legislative history seemingly points to an intent that is contrary to the natural and straightforward reading of the statute. However, it is far too limited to use as a basis for concluding that the words of the statute do not mean what they say. We find only one sentence that is pertinent to the issue at hand. The Joint Explanatory Statement of the Committee of Conference includes the statement that "[s]ection 240A(d) provides that the period of continuous residence or physical presence ends when an alien is served a notice to appear under section 239(a) (for the commencement of removal proceedings under section 240), or when the alien is *convicted* of an offense that renders the alien deportable from the United States, whichever is earliest." *See* H.R. Conf. Rep. No. 104-828, at 214, *available in* 1996 WL 563320, at *474 (emphasis added).

This sentence refers only to offenses that render an alien "deportable"

---

[3]*See, e.g.*, sections 101(f), 212(a)(2)(A), (B), (E), 237(a)(2), 238, 241(b)(3) of the Act, 8 U.S.C. §§ 1101(f), 1182(a)(2)(A), (B), (E), 1227(a)(2), 1228, 1231(b)(3) (1994 & Supp. II 1996); *see also* AEDPA §§ 435, 110 Stat. at 1274-75; 440(a), (d), (e)(7), (f), 110 Stat. at 1276-78; IIRIRA §§ 203(c), 110 Stat. at 566; 301(a), 110 Stat. at 575; 304; 309(c)(4)(G), 110 Stat. at 3009-626.

without mentioning those relating to inadmissibility that are also included in the section 240A(d)(1) cutoff rule. This one sentence appears to be an incorrect and incomplete summary of section 240A(d)(1). There is no analysis or discussion from which to conclude that Congress did not intend to give effect to the term "committed" that it actually used in the statute to curtail continuous residence or physical presence.

Given the conflict between the use of the word "committed" in the statute and the use of the word "convicted" in the legislative history, we must assume that one of these documents was drafted in error. An error in a 54-page summary of a 197-page conference report is understandable and is an example of why the Supreme Court cautions that legislative history is often unreliable, particularly when it is sparse. *See Board of Education of Westside Community Schools v. Mergens*, 496 U.S. 226, 238, 242 (1990). It is the statute, not the legislative history, that was passed by Congress and signed into law by the President. As stated by the Supreme Court, "Without a clearer indication of congressional intent than provided by the extremely sketchy legislative history . . . the best evidence of what Congress wanted is found in the statute itself . . . ." *Bread Political Action Committee v. Federal Election Committee*, 455 U.S. 577, 584 (1982). We would need more persuasive legislative history than this single sentence to reject the express language of the statute.

## VIII. IN ENACTING SECTION 240A(d)(1), CONGRESS DEPARTED FROM THE LANGUAGE OF FORMER SECTION 244(a)

We likewise find nothing in our past precedent which requires us to interpret section 240A(d)(1) in a manner that is contrary to an ordinary construction of the language of the statute. In *Matter of P-*, 6 I&N Dec. 788 (BIA 1955), we interpreted language in former section 244(a) of the Act, 8 U.S.C. § 1254(a) (1952), which provided a rule governing the calculation of the period of continuous physical presence required to establish eligibility for suspension of deportation in cases where the alien was deportable under certain criminal and other specified grounds. That language bears some similarity to section 240A(d)(1) to the limited extent that it references the "commission" of an act. The relevant language of former section 244(a) provided that, in order to be eligible for relief, an alien who was deportable under one of the designated grounds must have been "physically present in the United States for a continuous period of not less than ten years immediately following *the commission of an act, or the assumption of a status, constituting a ground for deportation.*"  (Emphasis added.)

Under that statutory scheme, the Board concluded that the commission of the crime "did not become 'a ground for deportation' until he was con-

victed of that act and sentenced therefor" and held that the 10-year period must be measured from the date of the alien's conviction and sentence. *Matter of P-, supra*, at 790; *see also Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988).

However, suspension of deportation under section 244(a) is not available to aliens, such as the respondent, who are in removal proceedings. Aliens in removal proceedings may seek the relief of cancellation of removal pursuant to section 240A(b) of the Act, under the rules enacted by the IIRIRA, as amended by section 203(a)(1) of the NACARA, 111 Stat. at 2196-98.

Congress has shown its familiarity with the language of former section 244(a) by carrying it forward in the "special rule" applicable to certain NACARA-eligible aliens. It is significant that Congress did not choose that language to measure the time requirements under the general cancellation of removal rules that apply to all other aliens. The language employed in section 240A(d)(1) is meaningfully different from that at issue in *Matter of P-*. When Congress replaces long-standing language with new language, it is reasonable to give that new language an ordinary and natural construction. It is not appropriate to give it a strained reading, simply because of the reading given to analogous, but meaningfully different language in prior law.

Moreover, as a general matter, we note that the classes of aliens who had been subject to the 10-year physical presence rule of former section 244(a) that was at issue in *Matter of P-, supra*, will largely be ineligible, by virtue of their criminal or other specified misconduct, to seek relief under the analogous cancellation of removal provisions in section 240A(b) pertaining to nonpermanent residents. *See* sections 240A(b)(1)(C), (c)(4) of the Act, *as amended*.

Congress has only carried the old rule forward into removal proceedings for a limited category of aliens described in section 309(c)(5)(C)(i) of the IIRIRA, as amended by section 203(a)(1) of the NACARA, who are eligible to seek "special rule" cancellation of removal despite their inadmissibility or deportability under the specified criminal and other grounds. *See* IIRIRA § 309(f)(1)(B), *as amended by* NACARA § 203(b), 111 Stat. at 2198-99. For NACARA-eligible aliens seeking "special rule" cancellation of removal, our decision in *Matter of P-*, interpreting language that has been carried forward in the "special rule" provision at section 309(f)(1)(B)(iii), may have continuing relevance. *Id.*

However, all other aliens are subject to the general rules for cancellation of removal. For non-NACARA aliens the period of continuous residence or physical presence required for cancellation of removal is set forth in sections 240A(a)(2), (b)(1)(A), and (2)(B) of the Act. Congress has directed that the requisite time period is to be calculated under the rule defined in section 240A(d)(1). When structuring that rule, Congress chose

697

not to employ the "assumption of status" and "constituting" a ground for deportation language that had been in place for decades for purposes of calculating the accrual of time for certain suspension of deportation cases.

We therefore conclude that *Matter of P-, supra*, is inapposite to non-NACARA cancellation of removal cases. Those cases are controlled by the section 240A(d)(1) rule for calculating the period of continuous residence or physical presence required for cancellation of removal.

In sum, neither the scant legislative history nor prior precedent compels us to read the statute in a manner that is contrary to the words used by Congress. As explained earlier, however, we find support within the statute itself for giving full effect to the natural reading of the "has committed" language.

## IX. OTHER CONSTRUCTIONS LEAD TO ANOMALIES

We have considered alternative constructions of the statute, but we find them unsatisfactory. The most obvious alternatives involve: (a) substituting the date of *conviction* in place of the date of *commission* of the crime as the cutoff point, which would be consistent with the language in the legislative history; or (b) reading the statutory language to cut off the accrual of time at the point when the alien finally becomes inadmissible or removable, as the dissent of Board Member Guendelsberger suggests.

An approach which substitutes a requirement that the alien has been convicted for the "has committed" language in section 240A(d)(1) admittedly offers the attraction of ease of application in those cases where an alien's inadmissibility or deportability is dependent on the existence of a conviction. However, such an interpretation would be unworkable in calculating the continuous period in those cases where some act other than a conviction renders an alien inadmissible or deportable.

For example, some grounds of inadmissibility may be established without a conviction, such as inadmissibility under section 212(a)(2)(A)(i)(I), for crimes involving moral turpitude, and under section 212(a)(2)(A)(i)(II), for controlled substances offenses. Inadmissibility under these provisions may be established by a conviction, but it may also be established by the admission to the commission of, or the admission to acts which constitute the essential elements of, one of those offenses.

Requiring a conviction would allow an alien who is rendered inadmissible by his or her admissions to continue to accrue time, until served with a notice to appear, despite having committed an offense that has rendered him or her inadmissible. Such an approach is contrary to the language of section 240A(d)(1).

We could, of course, substitute the concepts of "admits having committed" or "admits to acts constituting the essential elements of" a crime of

moral turpitude in place of the "has committed" language chosen by Congress. This would be consistent with looking to the date of conviction in cases where a conviction is needed, but it would require substituting a variety of concepts for the "has committed" language that Congress actually used. Moreover, this would mean that the controlling date is effectively the date that the alien is finally rendered inadmissible or deportable, either by virtue of a conviction or the required admissions of having committed a crime. This brings us to the dissent's proposal, which specifically focuses on the date the alien is rendered inadmissible or removable.

The dissent's proposed reading is that time ceases to accrue when the alien is rendered inadmissible or removable. The use of such a date as the cut-off date, however, would leave no role for the "has committed" language to play in section 240A(d)(1). The statute would read as if the "has committed" language were not present. But the statutory language focuses on "when the alien has committed an offense." It does *not* direct the inquiry to the date "when the alien . . . [is rendered] . . . inadmissible . . . or removable."

The Supreme Court has consistently expressed a deep reluctance to interpret a statutory provision in a way that makes other language within the same statute superfluous. *See, e.g., Freytag v. Comm'r*, 501 U.S. 868, 877 (1991); *International Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 201 (1991); *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 562 (1990). We simply cannot agree with a construction of the statutory language here that effectively turns the "has committed" phrase into surplusage.[4]

Despite its ease of administration in the large number of cases where a conviction is needed for removability, a construction of the statute that relies on the date of conviction in a case such as the one before us must either ignore (as the dissent's reading in effect would do) or give multiple meanings to the "has committed" language selected by Congress for the rule governing how continuous residence and physical presence are to be calculated. An approach which substitutes various events for the "has committed" language in the statute, or which relegates that language to needless surplusage, is simply not sensible.[5]

## X. CONCLUSION

---

[4]The last sentence of former section 212(c), 8 U.S.C. § 1182(c) (1994), as amended by section 440(d) of the AEDPA, 110 Stat. at 1217, and section 306(d) of the IIRIRA, 110 Stat. at 3009-612, did not use the word "when" and was not concerned with marking a point in time for measuring or ending the accrual of residence or physical presence. Contrary to the dissent's argument, we do not see the relevant language of former section 212(c) performing a "similar function" to the language of section 240A(d)(1).

[5]We see no "lingering ambiguities" here to which the rule of lenity might otherwise apply. *See INS v. Cardoza-Fonseca,* 480 U.S. 421, 449 (1987).

We find that the only sensible construction of the statute is to give the words used their natural and straightforward meaning. There is insufficient legislative history here to conclude that Congress did not intend to give effect to the "has committed" language in section 240A(d)(1). We will not accord greater weight to a single sentence of legislative history, which incompletely addresses the issue of termination of time, than we accord to the language of the statute itself.

The language chosen by Congress directs that an alien cease accruing the time required to establish eligibility for the relief of cancellation of removal at the point where he or she abuses the hospitality of this country by committing one of the designated offenses, so long as the offense subsequently renders the alien inadmissible or removable. Adhering to the direct command of the statutory language has not been shown to lead to any anomalous or absurd results in removal cases. And, importantly, it allows us to apply the statute in various situations, aside from those where a conviction is needed for removability, without being forced to contort the ordinary meaning of the provision as written and without making any language superfluous.

Accordingly, this respondent's period of continuous residence is deemed to have ended on the date he committed his controlled substance violation. The commission of that offense was prior to his attainment of the required 7 years of continuous residence. Therefore, he is statutorily ineligible for section 240A(a) cancellation of removal. Accordingly, we find that the Immigration Judge's pretermission of his application for cancellation of removal was proper.

**ORDER:** The appeal is dismissed.

Board Member Anthony C. Moscato did not participate in the decision in this case.

*DISSENTING OPINION:* John W. Guendelsberger, Board Member, in which Paul W. Schmidt, Chairman; Gustavo D. Villageliu and Lory D. Rosenberg, Board Members, joined

I respectfully dissent.

The respondent, a permanent resident alien, was found removable under section 237(a)(2)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(B)(i) (Supp. II 1996), on the basis of his conviction for a controlled substance violation. He has applied for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229(b)(a) (Supp. II 1996), in order to retain his status as a lawful resident of the United States. The respondent is otherwise eligible for cancellation of removal if he can show that he has 7 years of continuous residence in the United States after hav-

ing been admitted in any status.[1] Section 240A(a)(2) of the Act. The question presented here is whether the termination provision in section 240A(d) ended the qualifying period of residence as of the date of the respondent's conviction or the date of the crime.[2] The majority concludes that the "natural reading" of section 240A(d) establishes that Congress intended to end the qualifying period of residence as of the date the offense was committed. I cannot agree.

The "natural" and grammatically correct reading of the statute, clear legislative history directly on point, and basic principles of statutory construction all call for an interpretation of section 240A(d)(1) that would terminate the period of continuous residence at the time a respondent is rendered inadmissible or removable. In this case, the respondent was rendered removable upon conviction for the controlled substance violation. At that point, he had accrued 7 years of continuous residence. I therefore disagree with the majority's determination that the respondent is ineligible for cancellation of removal under section 240A(a).

## I. SECTION 240A(d)(1) ENDS ACCRUAL OF CONTINUOUS RESIDENCE WHEN A RESPONDENT IS RENDERED INADMISSIBLE OR REMOVABLE FOR HAVING COMMITTED ONE OF THE DESIGNATED OFFENSES

Section 240A(d)(1) addresses termination of continuous residence in the following terms:

> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 239(a) or when the alien has committed an offense referred to in section 212(a)(2) that renders the alien inadmissible to the United States under section 212(a)(2) or removable from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest.

Boiled down to its essentials[3], the critical language in section 240A(d)(1)

---

[1]There is no dispute that the respondent is otherwise eligible for cancellation of removal under section 240A(a). He has been admitted for permanent residence for more than the required 5 years and has not been convicted of an aggravated felony. *See* sections 240A(a)(1), (3) of the Act.

[2]The respondent was first admitted as a temporary resident on September 21, 1989. He was convicted of possession of cocaine in July 1997. The offense date was in August 1992. If section 240A(d)(1) ends continuous residence on the date of conviction, the respondent accrued the required 7 years of continuous residence. If continuous residence ends on the date of commission of the offense, the respondent lacks the required 7 years.

for purposes of the issue presented in this case reads as follows:

> [A]ny period of continuous residence . . . shall be deemed to end **WHEN** the alien has committed an offense [referred to in section 212(a)(2)] *that renders the alien . . . removable from the United States under section 237(a)(2) . . . .*

The final clause, "*that renders the alien . . . removable*," is a subordinate clause which modifies the direct object, "offense." The "*that renders*" clause is attached to, and is an integral part of, the main clause beginning with the word "when." It answers the question of when the commission of particular offenses, those "referred to in section 212(a)(2)," ends accrual of residence time. The subordinate clause attached to the main clause indicates that termination occurs WHEN "the alien has committed an offense . . . *that renders the alien removable from the United States*." The "when" clause does not end with the direct object, "an offense," or the descriptive phrase attached to it. It is limited by the "*that renders*" clause which modifies "an offense" and describes an additional factor which must have occurred before accrual of residence ends.

The majority asserts that the "that renders" clause merely defines the *types of offenses* which cut off the accrual of time. But the *types of offenses* which cut off the accrual of time are earlier described as those offenses "referred to in section 212(a)(2)." It is not the type of offense which is regulated by the "*that renders*" clause, but the impact of the offense, i.e., inadmissibility or deportability. The "*that renders*" clause is, of course, descriptive; it completes the description of *when* an offense which has been committed will terminate the accrual of residence.

The majority suggests that its reading of the statute may be better understood if the word "subsequently" or "ultimately" is inserted before the word "renders." *See Matter of Perez*, 22 I&N Dec. 3389, at 6 (BIA 1999). Notably, Congress did not choose to include such a modifier, and as an administrative body, we are not free to add language or rewrite provisions in order to achieve a particular meaning or result. Nor would such additional language necessarily achieve the result suggested by the majority. The subordinate *"that renders"* clause would still modify the "when" clause, as it now does. The suggested language would also make no sense in those cases in which commission of an offense is the same event that renders the alien inadmissible or removable, as in the case of an alien charged with having engaged in prostitution or commercialized vice. *See* section 212(a)(2)(D) of the Act, 8 U.S.C. § 1182(a)(2)(D) (1994 & Supp. II 1996).

---

[3]There is no question that the respondent had accrued 7 years of continuous residence prior to the service of the notice to appear. Because the respondent is charged with a ground of removability, the reference to inadmissibility under section 212(a) has also been extracted.

In such situations, there would be no "subsequent" event.

## II. THE MAJORITY DISTORTS THE SIGNIFICANCE AND MEANING OF THE "COMMITTED AN OFFENSE" LANGUAGE

The majority queries why Congress would have used the "has committed an offense" language had it meant to allow accrual of residence until occurrence of some event after the date of commission. Part of the answer is that section 212(a)(2), the universe of offenses which may eventually result in termination of accrual of residence, contains a variety of descriptions of the conduct which will render a respondent inadmissible or removable. Some provisions require a criminal conviction.[4] Some require only admission of acts constituting a criminal offense.[5] For some other provisions the mere commission of an offense suffices to render an alien inadmissible.[6]

Congress, having selected section 212(a)(2) grounds as the core of relevant offenses for purposes of section 240A(d), could not describe those offenses in terms of "convictions under section 212(a)(2)" because that would leave out all of those grounds which render an alien inadmissible without need for a conviction. The phrase "committed an offense referred to in section 212(a)(2)" is a shorthand description which sweeps broadly enough to encompass all the various acts, short of conviction, described in the section 212(a)(2) grounds for inadmissibility.

The majority suggests that the "has committed" language would be superfluous were the "that renders" clause read to govern when accrual of residence terminates. But the "has committed" language is no more superfluous as used in section 240A(d) than it was in the last sentence of former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), *as amended*. The language performs a similar function in both statutes: it describes a category of offenses which may, upon occurrence of a later event, result in a cutoff of eligibility for benefits. Former section 212(c) contained the following bar to eligibility:

> an alien who is deportable by reason of *having committed a criminal offense* covered

---

[4] *See, e.g.*, section 212(a)(2)(B) of the Act (conviction for two or more moral turpitude offenses).

[5] *See, e.g.*, section 212(a)(2)(A) of the Act (admits having committed or admits committing acts which constitute the essential elements of a crime involving moral turpitude or controlled substance violation).

[6] *See, e.g.*, section 212(a)(2)(D) of the Act (engaged in or is coming to the United States to engage in prostitution or commercialized vice).

in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i). (Emphasis added).[7]

Although most grounds of deportation listed in the section 212(c) bar to relief required a conviction, section 241(a)(2)(B)(ii) of the Act, 8 U.S.C. § 1251(a)(2)(B)(ii) (1994), also rendered deportable "[a]ny alien who is, or at any time after entry has been, a drug abuser or addict." Thus there was a need for the "committed any criminal offense" catchall in describing the grounds covered, rather than "convicted of" or some other terminology.

Notably, mere commission of an offense was not enough to bar relief under former section 212(c). But that did not make the section 212(c) "having committed" language superfluous. The term was part and parcel of the description of those categories of aliens who would be rendered ineligible for relief upon occurrence of a subsequent event, in the case of section 212(c), a finding of deportability. *See Matter of Fortiz,* 21 I&N Dec. 1199 (BIA 1998) (holding that for an alien to be barred from eligibility for a waiver under section 212(c) as one who "is deportable" by reason of having committed a criminal offense covered by one of the criminal deportation grounds there enumerated, he or she must have been charged with, and found deportable on, such grounds); *Matter of Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997). Likewise, the term "has committed" in section 240A(d) describes the categories of criminal acts which subject an alien to the stop-time rule and directs that time ends when the alien is rendered inadmissible or removable. The majority's purported concern over superfluous language is therefore simply unfounded.

Another provision using the point of "commission" to describe the grounds covered is former section 244(a)(2) of the Act, 8 U.S.C. § 1254(a)(2) (1994), which precludes suspension of deportation for persons deportable under former sections 241(a)(2), (3), or (4) who have not been

physically present in the United States for a continuous period of not less than 10 years immediately following the *commission of an act, or the assumption of a status, constituting a ground for deportation.* (Emphasis added.)

In construing section 244(a)(2), this Board ruled that it was not the "commission of the act," but the fact of deportability for having committed such an offense, that was the crucial point in time. *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988); *Matter of P-*, 6 I&N Dec. 788 (BIA 1955).

---

[7]This limitation on section 212(c) relief was added by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1217 ("AEDPA"), as amended by section 306(d) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-612 ("IIRIRA").

The statute in *Matter of P-* defined the event that triggered the commencement, rather than the termination, of the required period. The respondent in *Matter of P-* would have accrued the requisite 10 years if measured from the date of commission of the crime, but would not if the operative date was the date he was convicted. The Board found that the commission of the crime "did not become 'a ground for deportation' until he was convicted of that act and sentenced therefor" and accordingly ruled that the 10-year period must be measured from the date of his conviction and sentence. *Matter of P-, supra,* at 790.

*Matter of P-* was followed in *Matter of Lozada, supra*, where the Board applied the same language that was at issue in *Matter of P-* and concluded that "it is the conviction, not the commission of the offense, that renders the alien deportable." *Matter of Lozada, supra*, at 640. Notably, the language used by the Board, "renders the alien deportable," is the same language selected by the drafters of section 240A(d), i.e., the cutoff occurs "when the alien has committed an offense . . . *that renders the alien inadmissible . . . or removable.*" (Emphasis added.) This choice of language strongly suggests that the drafters' intentions as to the workings of the termination provision in section 240A(d) were consistent with the Board's explanation in *Lozada* of the operation of the termination provision in section 244(a).

When Congress replaced the section 212(c) waiver and section 244(a) suspension of deportation with cancellation of removal in sections 240A(a) and (b), it considerably revised the criminal bars to eligibility. It retained, however, the "committed an offense" formula from former section 212(c) to describe the *types of grounds* which would affect timing. As in former section 212(c), it is the point at which the respondent is rendered inadmissible or removable that is crucial in terms of *timing* in section 240A(d).

### III. LEGISLATIVE HISTORY AND BASIC PRINCIPLES OF STATUTORY CONSTRUCTION INDICATE THAT THE ACCRUAL OF TIME ENDS WHEN THE RESPONDENT IS RENDERED INADMISSIBLE OR REMOVABLE

On rare occasions, legislative history affords insight into the intent of the framers. Remarkably, in this case, we have an instance of legislative history directly on point. The Joint Explanatory Statement of the Committee of Conference clearly states: "Section 240A(d) provides that the period of continuous residence or physical presence ends when an alien is served a notice to appear under section 239(a) (for the commencement of removal proceedings under section 240), or when the alien is *convicted* of an offense that renders the alien deportable from the United States, whichever is earliest." *See* H.R. Conf. Rep. No. 104-828, at 214, *available in* 1996 WL 563320, at *474 (emphasis added). The legislative history makes no men-

705

tion of the date that the alien has *committed* the offense.

The majority declares the legislative history incomplete and, therefore, incorrect. The legislative history may be technically incomplete, because it does not address inadmissibility and those few grounds of inadmissibility which do not require a conviction in order that the respondent be rendered inadmissible, e.g., admission of commission of a moral turpitude crime under section 212(a)(2)(A) or engagement in prostitution under section 212(a)(2)(D). But the reference in the legislative history is to offenses which render the alien deportable (now removable), and all of the covered offenses in section 237(a)(2) (i.e., those which are referred to in section 212(a)(2)) require a conviction before the alien is considered removable.[8] Thus the legislative history's reference to "conviction" is an accurate reflection of the statute's effect in removal cases, i.e., for all the applicable removal grounds the alien is rendered removable upon conviction of a designated offense. While the legislative history may be technically incomplete, that does not make it incorrect, as the majority asserts, insofar as the expression of the general rule of interpretation to be applied to those offenses for which a conviction is required in the ground for inadmissibility or removal. In that sense the legislative history affords important guidance, if not a clear resolution, of the question of when, by and large, termination of residence occurs.

As discussed above, the guidance afforded in the legislative history of section 240A(d) is consistent with the approach used to bar relief in the predecessor provisions to cancellation of removal and in the Board's prior interpretation of similar statutory language in former section 244(a)(2). Other provisions barring relief for those involved in criminal activity generally resort to the date of conviction as the crucial factor in terminating eligibility. *See, e.g.*, sections 240A(a)(3), (b)(1)(C) of the Act.

The majority's "anomalies" argument is premised on the proposition that we propose to substitute "conviction" for "commission" in the statute. No such proposal has been made. Nor is that what the statute says. The statute refers to the point at which the alien is rendered inadmissible or removable. Thus the "anomalies" argument is built upon a false premise and fails.

The majority's statement that requiring a conviction would allow an alien who is *rendered inadmissible* by his or her admissions to continue to

---

[8]Under the terms of section 240A(d), only those section 237(a)(2) offenses which overlap with offenses described in section 212(a)(2) operate to terminate accrual of time. These section 237(a)(2) offenses are convictions for moral turpitude crimes (section 237(a)(2)(A)) and for controlled substance violations (section 237(a)(2)(B)(i)). The bars for aggravated felony convictions, firearms convictions, and other offenses described in section 237(a)(2) do not overlap with offenses described in section 212(a)(2).

accrue time until served with a notice to appear is simply wrong. If the alien is rendered inadmissible under the terms of section 212(a)(2) by admission of an offense, the accrual of residence would cease with the date of the admission of the offense. *See, e.g.*, section 212(a)(2)(D) of the Act (inadmissible if engaged in or coming to the United States to engage in prostitution or commercialized vice).

The termination of residence time upon the occurrence of the event which renders the alien inadmissible or removable is the historical approach and a common sense approach which eases administration of the law. Under this approach, as a practical matter, it is generally the date of conviction which will become the crucial point to be identified. The date of conviction is normally easy to pinpoint. Under the majority approach, in every case involving section 240A(d), the adjudicator will have to identify the date of commission of the offense. Just when a crime was "committed" will, in some cases, be uncertain or indeterminate. In cases involving conspiracies to commit an offense, for example, there will be considerable difficulty in identifying the offense date. Thus, ease of administration also augers in favor of a reading which recognizes that accrual of time ends when the alien is rendered inadmissible or removable.

The respondent's offense is one "referred to in section 212(a)(2)" at subparagraph (A)(i)(II), which pertains to controlled substance violations. However, with certain exceptions not applicable in this case, an alien who has committed a controlled substance violation is not inadmissible under section 212(a)(2) until he has been convicted.[9] Similarly, an alien is not removable under subparagraph (B)(i) of section 237(a)(2) without a conviction.

Any lingering doubts as to the appropriate construction of section 240A(d), after examining legislative history and other aids to construction, should be resolved by the rule of lenity, a principle of statutory interpretation deeply imbedded in immigration law. This rule requires that when a limitation on relief from removal is ambiguous, it must be afforded the narrower meaning, the meaning in which fewer activities bar the alien from eligibility. The reason for this rule in the immigration area is that, given the drastic consequences of deportation or removal, Congress must speak clearly and definitely before we apply a bar to relief from removal. *See INS v. Errico*, 385 U.S. 214, 225 (1966) (construing section 241(f) of the Act, 8 U.S.C. § 1251(f)(1964), and indicating that doubts as to the correct construction of the statute affording relief from deportation should be resolved

---

[9]*See generally* section 212(a)(2)(A)(i) of the Act; *Matter of J-*, 2 I&N Dec. 285 (BIA 1945). We also note that the record does not include evidence that the respondent is a drug trafficker under section 212(a)(2)(C), which may render a respondent inadmissible without a conviction.

in the alien's favor); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) (noting the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien"); *Fong Haw Tan v. Phelan,* 333 U.S. 6, 10 (1948) (stating that any doubts regarding the construction of the Act are to be resolved in the alien's favor); *Matter of Tiwari,* 19 I&N Dec. 875 (BIA 1989). Here, the rule of lenity also points toward the interpretation which terminates the period of continuous residence when the respondent is rendered inadmissible or deportable.

## IV. CONCLUSION

A common sense reading, clear legislative history, ease of administration, and our prior interpretation of similar statutory language indicate that section 240A(d) terminates accrual of time toward the continuous residence requirement when the respondent is rendered inadmissible or removable for commission of an offense described in section 212(a)(2). The respondent accrued more than the requisite 7 years of continuous residence between his admission as a temporary resident on September 21, 1989, and his conviction on July 11, 1997, which rendered him removable. Accordingly, I would sustain his appeal and remand the record to the Immigration Judge for consideration of the respondent's application for cancellation of removal under section 240A(a).