Nabih Yacoub TABLIE, Petitioner,

v.

Alberto R. GONZALES, Attorney General of the United States, and U.S. Citizenship & Immigration Services, Respondents.

Docket No. 05–2955–AG.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 10, 2006.

Decided: Dec. 6, 2006.

Michael B. Berger, Berger & Berger (William H. Berger, on the brief), Buffalo, NY, for Petitioner.

Kirti Vaidya Reddy, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, of counsel; Neil M. Corwin, on the brief), for Respondent.

Before JACOBS, Chief Judge,
WESLEY, HALL, Circuit Judges.

DENNIS JACOBS, Chief Judge.

An Immigration Judge ("IJ") held that Nabih Yacoub Tablie was ineligible for suspension of deportation because he failed to establish continuous physical residence in the United States for the requisite number of years. The Board of Immigration Appeals ("BIA") dismissed Tablie's appeal, concluding that Tablie's commission of a crime in 1984 ended his period of continuous residence in the sixth year. Under the law as it stood when the deportation proceedings began in 1989, Tablie's offense would not have affected the period of residence. 8 U.S.C. § 1254 (repealed 1996). However, in 1996 the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1229b(d)(1), was amended such that an alien's period of continuous residence ended upon the commission of certain offenses. Because we conclude that the relevant provisions of the INA apply retrospectively to Tablie's 1984 criminal offense, we deny his petition for review.

## BACKGROUND

Tablie, a native and citizen of Lebanon, legally entered the United States in 1979 on a student visa to attend college in Buffalo. In 1984, near the completion of his studies, Tablie lied on an application for permanent residence; in 1986, he was convicted of making false material statements to the Immigration and Naturalization Service.

In October 1989, deportation proceedings were commenced by order to show cause. Those proceedings were delayed for various reasons not relevant to the current appeal. In July 2000, the IJ determined that Tablie was ineligible for suspension of deportation. The BIA dismissed Tablie's appeal in May 2005. Tablie filed a timely petition for review in June 2005.

## DISCUSSION

■ Prior to 1996, an alien subject to removal could apply to the Attorney General for suspension of deportation, a form of discretionary relief. To qualify for suspension of deportation, an alien had to prove (1) that he was "physically present in the United States for a continuous period of not less than seven [or ten [1]] years

---

1. The period was either seven or ten years, depending on the basis for deportation.

There is some disagreement between the parties concerning which period should apply to

immediately preceding the date of such application," (2) "that during all of such period he was and is a person of good moral character," and (3) that he was "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a) (repealed 1996).

In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, altered the suspension of deportation procedure in several ways that bear upon this appeal. First, removal procedures that were commenced by order to show cause are now commenced by the filing of a notice to appear. Second, the relief that was called suspension of deportation is now called "cancellation of removal." INA § 240A(a), 8 U.S.C. § 1229b(a). Third— and most important for purposes—the accrual of continuous residence now ends when deportation proceedings commence, or when the alien commits certain offenses, or if the alien is absent for a long time:

**(1)** Termination of continuous period

... [A]ny period of continuous residence or continuous physical presence in the United States shall be deemed to end

**(A)** ... when the alien is served a notice to appear ..., or

**(B)** when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible ... or removable ..., whichever is earliest.

**(2)** Treatment of certain breaks in presence

An alien shall be considered to have failed to maintain continuous physical presence in the United States ... if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

8 U.S.C. § 1229b(d) (bolded and re-formatted). Under subsection 240A(d)(1), called the "stop-time rule," the alien's continuous residency or physical presence ends, for purposes of cancellation of removal, on the date he commits a qualifying offense or on the date a notice to appear is filed. 8 U.S.C. § 1229b(d)(1). Under subsection 240A(d)(2) an alien's presence is insufficiently "continuous" if he leaves the country for a period of ninety days or for 180 days in the aggregate. 8 U.S.C. § 1229b(d)(2).

Accordingly, under § 240A(d)(1) Tablie's period of continuous residence ended in 1984 when he lied on his application for permanent residence, after only five years in the country. Tablie would therefore be ineligible for cancellation of removal under the new stop-time rule. The question raised by Tablie's petition is whether the stop-time rule applies to his eligibility for cancellation of removal. We conclude that it does.

Tablie's removal proceedings began in 1989, seven years before the enactment of IIRIRA. Generally, IIRIRA provisions do not apply "in the case of an alien who is in exclusion or deportation proceedings as of the [statute's] effective date." IIRIRA § 309(c)(1). In such a case, "the proceedings (including judicial review thereof) shall continue to be conducted without regard to" IIRIRA's amendments to the INA. *Id.* § 309(c)(1)(B).

However, IIRIRA contains a special "transitional rule with regard to suspen-

Tablie. For purposes of this petition, it does    not matter.

sion of deportation," which states that "[p]aragraphs (1) and (2) of section 240A(d) of the [INA] (relating to continuous residence or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act." *Id.* § 309(c)(5). This wording is defective (and was later amended) because, as mentioned above, "notices to appear" did not exist before the enactment of IIRIRA; so the transitional rule is meaningless insofar as it provides for the application of § 240A(d) to "notices to appear" that were "issued before ... the date of the enactment of this Act." IIRIRA's transitional rule was revised in the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub.L. No. 105–100, 111 Stat. 2160, which replaced the phrase "notices to appear" with the phrase "orders to show cause" (the initiating instruments for removal proceedings before the enactment of IIRIRA). NACARA § 203(1).

So amended, the transitional rule states that INA § 240A(d) shall apply to orders to show cause issued before the enactment of IIRIRA. However, Tablie argues that the text of the transitional rule remains ambiguous.

As Tablie reads the transitional rule, "orders to show cause" (in the phrase "shall apply to orders to show cause") refers solely to subsection 240A(d)(1)(A), which ends an alien's period of continuous residence when he is served with a notice to appear.

As the BIA reads the transitional rule, the phrase "shall apply to orders to show cause" means that in proceedings commenced by an order to show cause served before the enactment of IIRIRA, the stop-time rule of INA § 240A(d)(1) operates to stop time under both subsections—both upon service of the document initiating deportation proceedings (§ 240A(d)(1)(A)) *and* upon commission of a criminal offense

(§ 240A(d)(1)(B)). Under this reading of the transitional rule, the happening of either event (the initiation of proceedings or the commission of an offense) before the enactment of IIRIRA ends the period of continuous residence relevant to eligibility for cancellation of removal.

If Tablie is correct, the application of § 240A(d)(1)(A)'s stop-time rule to Tablie's 1989 order to show cause would not affect his eligibility for cancellation of removal because by 1989, when he was served with an order to show cause, Tablie had been present in the country for over ten years and would therefore nevertheless qualify for cancellation of removal. If the BIA is correct, and § 240A(d)(1)(B)'s stop-time rule for criminal offenses applies, then Tablie's 1984 crime ended his continuous residence after only five years, and he does not qualify for cancellation of removal.

Tablie advances the following two arguments in favor of his reading of the statute:

First, the phrase "shall apply to orders to show cause" cannot apply to all proceedings in which an order to show cause has been issued, because other provisions of IIRIRA use the term "proceedings" when referring to proceedings initiated before enactment. *See, e.g.,* IIRIRA § 309(c)(1)(B). Generally, where Congress employs a specific term in one provision of a statute and a different term in another provision, it is assumed that Congress's use of different terms is intentional and purposeful. *See Duncan v. Walker,* 533 U.S. 167, 173, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

Second, to the extent there is any ambiguity regarding the transitional rule's application, we generally "constru[e] any lingering ambiguities in deportation statutes in favor of the alien."

See Ki Se Lee v. Ashcroft, 368 F.3d 218, 225 (3d Cir.2004).

■ Tablie's reading of the statute is premised on an ambiguity that is not there. The transitional rule states that "Paragraphs (1) *and (2)* of section 240A(d) of the [INA] ... shall apply to notices to appear [now, orders to show cause] issued before, on, or after the date of the enactment of this Act." IIRIRA § 309(c)(5) (emphasis added). As noted above, § 240A(d)(2) concerns when an alien's absence from the country breaks the continuity of his presence. There is no reference to "orders to show cause" or "notices to appear" in § 240A(d)(2). If, as Tablie argues, the transitional rule's use of the phrase "notices to appear" referred only to the subsection in which notices to appear are referenced (*i.e.*, § 240A (d)(1)(A)), then the transitional rule's reference to § 240(d)(2) would be surplusage. As Tablie conceded during oral argument, his reading of the transitional rule would deprive "and (2)" of any meaning. That is fatal. "We are ... obliged 'to give effect, if possible, to every clause and word of a statute,' and to render none superfluous." *Collazos v. United States*, 368 F.3d 190, 199 (2d Cir.2004) (quoting *Duncan*, 533 U.S. at 174, 121 S.Ct. 2120). Congress's inclusion of the words "and (2)" in § 309(c)(5) must mean something. Accordingly, the only possible reading of the transitional rule is that Congress used the phrase "notices to appear" in IIRIRA and "orders to show cause" in NACARA to mean that INA §§ 240A(d)(1) and (2) apply to proceedings pending on the date of IIRIRA's enactment. *Accord Peralta v. Gonzales*, 441 F.3d 23, 30–31 (1st Cir. 2006). "No other construction would give any effect to the two provisions' references to paragraph (2)" of INA § 240A (d). *Id.* at 31.

■ Tablie's proceedings were pending on the date of IIRIRA' s enactment. Therefore, INA § 240A(d)(1)(B) applies to Tablie, and his 1984 false statement ended his period of continuous residence and physical presence after five years. As the BIA correctly concluded, he is thus ineligible for cancellation of removal.

\*　\*　\*　\*　\*　\*

Tablie raises no other objections to the BIA's decision, and therefore we deny his petition for review. Tablie's June 15, 2005 motion for a stay of removal is denied.