09-0739-ag(L)
*Baraket v. Holder*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: January 3, 2011                    Decided: January 18, 2011)

Docket Nos. 09-0739-ag(L) 09-3399-ag(Con)

_____

MOURAD BARAKET, also known as MOURAD BEN HASSEN BARAKET,

*Petitioner*,

*-v.-*

ERIC H. HOLDER, JR., United States Attorney General,

*Respondent*.

_____

BEFORE:    KEARSE, WINTER, and HALL, *Circuit Judges*.

_____

Petition for review of a decision of the Board of Immigration Appeals pretermitting the

petitioner's application for cancellation of removal because his commission of a crime terminated

his required period of continuous residence in the United States, pursuant to the "stop-time rule" of

8 U.S.C. § 1229b(d)(1).  The petitioner argues that, notwithstanding contrary language in our prior

case law, we should interpret the stop-time rule to terminate continuous residence on the date he is

convicted of (or admits to) the offense, rather than on the date he commits the offense.  We conclude

that the petitioner's argument is foreclosed by our existing precedents.  PETITION FOR REVIEW

DENIED.

1

LINDA KENEPASKE, New York, New York, *for Petitioner*.

JAMES E. GRIMES, Senior Litigation Counsel (Tony West, Assistant Attorney General, Linda S. Wernery, Assistant Director, *on the brief*), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent*.

PER CURIAM:

This case requires us to clarify whether certain passages from several of our past decisions were holdings or dicta. When an alien who is a lawful permanent resident facing removal from the United States seeks relief in the form of cancellation of removal, he must show, *inter alia*, that he has resided in the United States continuously for seven years. *See* 8 U.S.C. § 1229b(a)(2). For purposes of an application for cancellation of removal, Congress has provided that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien has committed" any of certain crimes. 8 U.S.C. § 1229b(d)(1).

At issue in this case is whether § 1229b(d)(1), known as the "stop-time rule," is triggered when an alien *commits* the predicate offense, or on some other date, such as the date on which he is convicted of the offense or admits to having committed the offense. Although we have never engaged in a lengthy discourse on the subject, we have stated in more than one opinion that the relevant date is the date on which the alien commits the offense. *See Zuluaga Martinez v. INS*, 523 F.3d 365, 369 (2d Cir. 2008); *Reid v. Gonzales*, 478 F.3d 510, 512 (2d Cir. 2007); *Tablie v. Gonzales*, 471 F.3d 60, 62 (2d Cir. 2006). The petitioner argues that our past pronouncements on this question have been dicta, and he asks us to consider the question on a blank slate. Review of our past decisions leads us to the conclusion that we have already held on the question presented,

and we must therefore deny the petition for review. We issue this brief opinion solely to eliminate any doubt as to the state of our case law.

**BACKGROUND**

On May 11, 1996, petitioner Mourad Ben Hassen Baraket, a native of Tunisia and citizen of Germany, was admitted to the United States as a lawful permanent resident. On October 25, 2003, after a trip overseas, Baraket arrived at the Newark, New Jersey, airport and applied for admission to the United States as a returning lawful permanent resident. Immigration authorities denied Baraket admission, and in May 2004 they served him with a Notice to Appear alleging that he was removable because he had been convicted of a crime involving moral turpitude, namely, that in November 2003 he had been convicted of Grand Larceny in the Third Degree in the Supreme Court of New York, New York County.

At a hearing before an immigration judge ("IJ") in New York City, Baraket admitted that he had pleaded guilty to third-degree grand larceny and that the acts underlying his offense had been committed between October 2001 and December 2001. The IJ pretermitted Baraket's application for cancellation of removal, finding that Baraket's crime, committed between October 2001 and December 2001, stopped the clock of continuous residence short of the seven-year mark. She ordered Baraket removed to Tunisia, or, in the alternative, to Germany. The IJ subsequently granted a motion for reconsideration filed by new counsel for Baraket, but ultimately denied the cancellation motion a second time, again holding that the continuous-residence clock was stopped when Baraket committed his offense.

The Board of Immigration Appeals ("BIA") dismissed Baraket's appeal. It noted that it had expressly held in *Matter of Perez*, 22 I. & N. Dec. 689, 693 (BIA 1999), "that the date of

commission, not conviction, was critical to calculating the period of [continuous residence]." In July 2009, the BIA denied Baraket's motion for reconsideration, noting that Baraket had "essentially repeat[ed] the argument made on appeal." Baraket now petitions for review of both of the BIA's orders.

**DISCUSSION**

This appeal presents solely a question of law: how to properly interpret 8 U.S.C. § 1229b(d)(1). Ordinarily, we review *de novo* the BIA's decisions with respect to questions of law, but we must give appropriate deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837 (1984), to the BIA's published, precedential interpretations of the Immigration and Nationality Act. *See Medina v. Gonzales*, 404 F.3d 628, 633-34 (2d Cir. 2005); *Michel v. INS*, 206 F.3d 253, 262 (2d Cir. 2000).

A lawful permanent resident who applies for cancellation of removal must demonstrate, *inter alia*, that he "has resided in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(a)(2). Relevant to this requirement, the so-called "stop-time rule" provides, with an exception not relevant here, that

> any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) . . . when the alien is served a notice to appear . . ., or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

8 U.S.C. § 1229b(d)(1); *see also* § 1229b(a)(2) (allowing cancellation of removal for an alien who has been a lawful permanent resident for at least five years and who, *inter alia*, "has resided in the United States continuously for 7 years after having been admitted in any status"); § 1229b(b)(1)(A)

4

(allowing cancellation of removal — and a change to lawful permanent resident status — for an alien who, *inter alia*, "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of . . . application" for cancellation of removal). Among the offenses that "render[] the alien inadmissible to the United States under [8 U.S.C. §] 1182(a)(2)" are "crime[s] involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). It is undisputed for purposes of this petition for review that: (1) Baraket's period of continuous residence in the United States began to run on May 11, 1996, when he was admitted as a lawful permanent resident; (2) his offense was a crime involving moral turpitude; (3) he committed the acts that led to his conviction between October 2001 and December 2001; and (4) he was convicted in November 2003. Thus, if the date of commission of the offense controls, Baraket is ineligible to apply for cancellation of removal. If some other date after May 11, 2003 controls (such as the date of his conviction), he is eligible to apply.

In *Matter of Perez*, 22 I. & N. Dec. 689, 692-700 (BIA 1999), the BIA, sitting *en banc*, construed the stop-time rule to terminate continuous residence or physical presence on the date an alien commits a predicate offense. Baraket argues that *Perez* was wrongly decided. He asks us to overrule it, presumably by (1) concluding that the *Perez* majority's view does not pass muster even when afforded *Chevron* deference (either because the statute is unambiguous on its face or because the *Perez* majority's interpretation of the ambiguous statute is unreasonable); and (2) adopting the reasoning of the *Perez* dissent, which would have held that the stop-time rule is not triggered until the date of conviction. *See Perez*, 22 I. & N. Dec. at 700 (Guendelsberger, Board Member, dissenting).

5

We cannot rule as Baraket requests, and we do not reach the *Chevron* analysis. We have previously stated that the stop-time rule is triggered on the date an alien commits a predicate offense. *See Tablie*, 471 F.3d at 62; *see also Reid*, 478 F.3d at 512 (citing *Tablie* for the proposition that continuous residence ceases upon commission of the predicate offense, not upon conviction); *Zuluaga Martinez*, 523 F.3d at 369 (same).

Baraket urges that any comment we made in these cases with respect to the triggering date of the stop-time rule was dicta. We acknowledge that this may be true with respect to *Tablie*, where we made a passing observation that the alien's "period of continuous residence ended . . . when he lied on his application for permanent residence, after only five years in the country," and then turned to the principal question raised on that petition for review, namely, whether the stop-time rule is retroactive to proceedings initiated before enactment of the rule. 471 F.3d at 62. We did not consider whether any different understanding of the stop-time rule was plausible. However, there is no longer any question that we subsequently reached a holding on the same question. In *Zuluaga Martinez*, we necessarily decided the question that is before us today, because the petitioner in that case committed his predicate offense just one month before he would have reached the seven-year mark. 523 F.3d at 367. Furthermore, although we did not conduct a lengthy analysis of the stop-time rule, we emphasized that, by the language of the statute, the rule is triggered "*when the alien has committed an offense*," and we explained: "Thus, it is the date of the commission of the offense — not the date of the subsequent conviction — that matters for purposes of computing an alien's period of continuous residence." *Id.* at 369.

Baraket thus overstates his case when he argues that we have never "substantively discuss[ed]" the question raised in his petition for review. Pet. Br. at 10 n.7. In any event, it is not

6

substantive discussion of a question or lack thereof that distinguishes holding from dictum, but rather whether resolution of the question is necessary for the decision of the case. *See Xiao Ji Chen*, 471 F.3d at 338; *see also S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998) (even if a published decision of this Court "misinterpreted . . . prior cases" and even if "the [earlier] court was not required to decided the way it did, once it did so, its decision became binding precedent"). Although we cited to *Tablie*'s arguable dictum in *Zuluaga Martinez*, we also necessarily reached a holding on the question of law presented by the present case. We may not now reach a contrary decision simply because Baraket believes that our prior opinions on this question ought to have been more detailed. *See S & R Co. of Kingston*, 159 F.3d at 83 ("A decision of a panel of this Court is binding unless and until it is overruled by the Court *en banc* or by the Supreme Court.") (quoting *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995) (per curiam)).

We are bound to rule that "it is the date of the commission of the offense . . . that matters for purposes of computing an alien's period of continuous residence," *Zuluaga*, 523 F.3d at 369. Moreover, the reading that we are bound to is also the reading that best comports with a natural reading of the statute. In *Perez*, the BIA focused on the same point we emphasized in *Zuluaga Martinez*, namely, that the stop-time rule is triggered "when the alien 'has committed' one of the designated offenses." 22 I. & N. Dec. at 693. Giving these words their natural meaning strongly suggests that it is the commission of the acts that constitute the offense, not conviction for the offense, that controls. Furthermore, as the BIA observed, the statute's requirement that the offense be one "that renders the alien inadmissable . . . or removable" is simply "a restrictive clause which modifies the word 'offense' by limiting and defining the types of offenses which cut off the accrual of further time as of the date of their commission." *Id.* at 692-93. Baraket would have us hold that

7

the "that renders" clause imposes, to use the BIA's term, "a separate temporal requirement," *id.* at 693, but that would result in a conflict with the temporal requirement already in the plain language of the statute, namely, the provision that time is stopped once an alien "has committed" a relevant offense.

Baraket concedes that he committed acts between October 2001 and December 2001 that constituted a crime involving moral turpitude. The agency therefore properly pretermitted his application for cancellation of removal on the grounds that, within the meaning of § 1229b(a)(2), he had not continuously resided in the United States for seven years after his lawful entry in May 1996. *See* 8 U.S.C. § 1229b(d)(1); 8 U.S.C. § 1182(a)(2)(A)(i)(I).

We have considered Baraket's other arguments and find them to be without merit.

**CONCLUSION**

We deny the petition for review.