16-1465-ag(L)
*Gomez Heredia v. Sessions*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: May 5, 2017  Decided: July 27, 2017)

Docket Nos. 16-1465-ag, 16-3346-ag

HOXQUELIN GOMEZ HEREDIA, a/k/a OQUELIN GOMEZHEREDIA,
a/k/a SOKELIN HEREDIA,

*Petitioner*,

— v. —

JEFFERSON B. SESSIONS III,
UNITED STATES ATTORNEY GENERAL,

*Respondent.*[*]

Before:

WALKER, LIVINGSTON, and LYNCH, *Circuit Judges.*

Hoxquelin Gomez Heredia seeks review of two decisions of the Board of Immigration Appeals denying him relief. In the first challenged decision, the BIA dismissed the petitioner's appeal, affirming the Immigration Judge's conclusion

---

[*] The Clerk of Court is directed to amend the captions as set forth above.

that he was a non-citizen convicted of drug offenses that made him inadmissible to the United States. In the second, the BIA denied the petitioner's motion to reopen the proceedings, concluding that he was not eligible for cancellation of removal, a discretionary form of relief from removal that is available to lawful permanent residents who meet certain requirements. On appeal, the petitioner contends that the BIA erred in two ways. First, he argues that he should not have been treated as seeking admission to the United States when he returned from a short trip abroad in 2015. Second, he argues that he is eligible for cancellation of removal because his 1999 drug offense did not prevent him from accruing seven years of residency in the United States, which is a requirement for cancellation of removal. We disagree. Accordingly, the consolidated petitions for review are DENIED. Since we have completed our review, the pending motion for stay of removal is DENIED as moot.

---

WILLIAM C. MENARD, Baurkot & Baurkot, Easton, PA (Raymond G. Lahoud, Norris, McLauglin & Marcus, P.A., Allentown, PA, *on the brief*) *for* Petitioner Hoxquelin Gomez Heredia.

VICTORIA BRAGA, Trial Attorney (Surell Brady, Trial Attorney, Chad A. Readler, Acting Assistant Attorney General, and Cindy S. Ferrier, Assistant Director, *on the brief*), United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., *for* Respondent Jefferson B. Sessions, III.

---

GERARD E. LYNCH, *Circuit Judge*:

Hoxquelin Gomez Heredia ("Gomez") seeks review of two decisions of the Board of Immigration Appeals ("BIA") denying him relief. In the first challenged decision, the BIA dismissed Gomez's appeal, affirming the Immigration Judge's

2

("IJ") conclusion that he was a non-citizen convicted of drug offenses that made him inadmissible to the United States. In the second, the BIA denied Gomez's motion to reopen the proceedings, concluding that he was not eligible for cancellation of removal, a discretionary form of relief from removal that is available to lawful permanent residents who meet certain requirements. On appeal, Gomez contends that the BIA erred in two ways. First, he argues that he should not have been treated as seeking admission to the United States when he returned from a short trip abroad in 2015. Second, he argues that he is eligible for cancellation of removal because his 1999 drug offense did not prevent him from accruing seven years of residency in the United States, which is a requirement for cancellation of removal.

We disagree. Accordingly, the consolidated petitions for review are DENIED. Since we have completed our review, the pending motion for stay of removal is DENIED as moot.

## BACKGROUND

Gomez, a native and citizen of the Dominican Republic, entered the United States as a lawful permanent resident in August 1997. In 1999, he was convicted of criminal possession of marijuana in the fifth degree under New York Penal

3

Law ("NYPL") § 221.10. In 2010, he was convicted of criminal possession of a narcotic (cocaine) with intent to sell under NYPL § 220.16(1), which is an aggravated felony under the Immigration and Nationality Act ("INA") because it is a drug trafficking offense. *See* 8 U.S.C. § 1101(a)(43)(B); *Harbin v. Sessions*, 860 F.3d 58, 63 (2d Cir. 2017). In June 2015, Gomez took a short trip to the Dominican Republic. Upon his return, he was treated as a lawful permanent resident "seeking an admission into the United States" because he had been convicted of an enumerated drug offense. 8 U.S.C. § 1101(a)(13)(C)(v); *see id.* § 1182(a)(2)(A)(i)(II). That same day, he was charged as inadmissible and subject to removal because of his two drug convictions.

On January 12, 2016, after granting several continuances, an IJ ordered Gomez removed. The IJ noted that Gomez had not applied for cancellation of removal, a discretionary form of relief available to lawful permanent residents who meet three requirements. Those requirements, generally speaking, are: (1) five years of lawful admission for permanent residence; (2) seven years of continuous residence in the United States "after having been admitted in any status"; and (3) no aggravated felony convictions. *Id.* § 1229b(a). Although the IJ did not reach the issue, Gomez was apparently not eligible for cancellation of

4

removal at the time of its decision because his 2010 conviction was for an aggravated felony.[1]

In May 2016, the BIA affirmed. The BIA noted that "[r]elief from removal is not an issue on appeal," Certified Administrative Record ("CAR") 79 n.1, meaning that Gomez did not raise any issues regarding his eligibility for cancellation of removal. Instead, Gomez argued that he should not have been classified as seeking admission in 2015 when he arrived home after his short trip to the Dominican Republic. The BIA rejected that argument, relying on its prior decision, *In re Collado-Munoz*, 21 I. & N. Dec. 1061, 1063-66 (B.I.A. 1998), which held that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009-546 ("IIRIRA"), overruled the equitable doctrine ("*Fleuti* doctrine") that had allowed lawful permanent residents to take innocent, casual, and brief trips abroad without applying for admission upon

---

[1] Gomez discussed his eligibility for cancellation of removal at a September 1, 2015 hearing before the IJ. At that hearing, counsel for Gomez indicated that she had prepared an application for cancellation of removal, but that she had a "potential concern around eligibility," Certified Administrative Record 164, because at the time counsel did not know whether Gomez had in fact pled guilty to a drug trafficking crime. Presumably, once counsel discovered that Gomez had a conviction for an aggravated felony, she declined to pursue cancellation of removal.

their return. *See Rosenberg v. Fleuti*, 374 U.S. 449, 461-62 (1963). Thus, according to the BIA, Gomez was properly subjected to readmission procedures when he arrived in the United States in 2015 under the relevant provision of the INA as amended by IIRIRA, 8 U.S.C. § 1101(a)(13)(C)(v). The BIA also noted Gomez's continued efforts to vacate his 2010 aggravated felony conviction, and wrote that, if Gomez succeeded in having any of his convictions vacated, he was free to ask the BIA to reopen his case to consider the changed circumstances. In No. 16-1465, Gomez petitions for review of the BIA's initial dismissal of his appeal, arguing that the BIA erred in concluding that he was properly treated as seeking admission when he returned to New York in 2015.

Shortly after the BIA issued its first decision, a New York court vacated Gomez's 2010 aggravated felony conviction and Gomez pled guilty to possession of a narcotic substance of one half ounce or more, NYPL § 220.16(12). The new conviction was not for a drug trafficking offense; thus, it is not an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). Gomez then timely moved to reopen his removal proceeding and applied for cancellation of removal. He argued that, absent the aggravated felony conviction, he was eligible for cancellation of removal, implicitly claiming that he satisfied its other two requirements: that he

was a lawful permanent resident for more than five years and that he had resided continuously in the United States for more than seven. *See* 8 U.S.C. § 1229b(a)(1)-(2).

In September 2016, the BIA denied reopening. Although the BIA acknowledged that Gomez no longer had an aggravated felony conviction, it determined that he had not demonstrated *prima facie* eligibility for cancellation of removal because his 1999 marijuana offense triggered the "stop-time rule," which prevented him from accruing the required seven years of continuous residency in the United States. The intricacies of the stop-time rule will be discussed in detail below. In No. 16-3346, Gomez seeks review of the BIA's denial of his motion to reopen. He argues that the stop-time rule was not triggered until he applied for admission in 2015 when he returned from the Dominican Republic, and therefore that he accrued more than seven years of continuous residency in the United States. His petitions for review have been consolidated.

## DISCUSSION

The consolidated petitions for review raise two issues. First, Gomez contends that the BIA erred in dismissing his initial appeal because it mistakenly concluded that IIRIRA overruled the *Fleuti* doctrine. *See Fleuti*, 374 U.S. at 461-62.

Second, he argues that the BIA abused its discretion in denying his motion to reopen because it incorrectly held that he was ineligible for cancellation of removal because of the stop-time rule. For the following reasons, we find both arguments unpersuasive.[2]

## I.  IIRIRA overruled the *Fleuti* doctrine.

"Under [*Fleuti*], a lawful permanent resident of the United States was not subject to exclusion proceedings . . . if the lawful permanent resident's departure from the United States was an innocent, casual, and brief excursion." *Centurion v. Sessions*, 860 F.3d 69, 72 (2d Cir. 2017) (internal quotation marks omitted). "In other words, lawful permanent residents could come and go from the United States on short trips without formally seeking admission." *Id.* IIRIRA, however, changed the "immigration law landscape" with respect to lawful permanent

---

[2] Because Gomez was deemed inadmissible due to a drug offense, our review of the petitions is limited to constitutional and other legal questions, 8 U.S.C. § 1252(a)(2)(C), (D), which we review *de novo*, *Chambers v. Office of Chief Counsel*, 494 F.3d 274, 277 (2d Cir. 2007). Although we review questions of law *de novo*, we "must give appropriate deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837 (1984), to the BIA's published, precedential interpretations of the [INA]." *Baraket v. Holder*, 632 F.3d 56, 58 (2d Cir. 2011). Both petitions raise issues of "legal prescription or statutory interpretation," which "we unambiguously have jurisdiction to review." *Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010); *see Harbin*, 860 F.3d at 63 (adjudicating petition concerning eligibility for cancellation of removal).

residents leaving and reentering the United States. *Id*. As relevant here, IIRIRA amended the INA to provide that an "alien lawfully admitted for permanent residence . . . shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . has committed an offense identified in [§] 1182(a)(2)," which includes drug offenses. 8 U.S.C. § 1101(a)(13)(C)(v). Since IIRIRA, therefore, "a lawful permanent resident must seek formal admission—even if returning from a brief trip abroad—if he has committed a drug offense." *Centurion*, 860 F.3d at 72. "In turn, a lawful permanent resident who has been convicted of or who admits committing a drug offense . . . is inadmissible." *Id.*

Gomez argues that he should not have been treated as seeking admission under 8 U.S.C. § 1101(a)(13)(C)(v) because his trip was "innocent, casual, and brief" under *Fleuti*, 374 U.S. at 462, and the BIA erred in concluding that IIRIRA overruled the *Fleuti* doctrine.[3] He is wrong. As we recently explained, "[t]hrough

---

[3] In support of his argument, Gomez incorrectly asserts that the *Fleuti* doctrine was a constitutional rule protecting the due process rights of lawful permanent residents. As the Court wrote in *Fleuti*, that decision rested on a "threshold issue of statutory interpretation," not a constitutional question. *Fleuti*, 374 U.S. at 451; *see Othi v. Holder*, 734 F.3d 259, 268 (4th Cir. 2013) ("*Fleuti* was unmistakably not a constitutional case.").

the passage of IIRIRA in 1996, Congress ended the *Fleuti* doctrine." *Centurion*, 860 F.3d at 72. We first reached that conclusion in *Vartelas v. Holder*, 620 F.3d 108, 116-17 (2d Cir. 2010), *rev'd on other grounds*, 566 U.S. 257 (2012). Although the Supreme Court reversed *Vartelas* in part, it "left untouched the portion of our decision in which we deferred to the BIA and held that IIRIRA overruled the *Fleuti* doctrine." *Centurion*, 860 F.3d at 72 n.1; *see also In re Collado-Munoz*, 21 I. & N. Dec. at 1065. "Thus, we adhere to the portion of our decision in *Vartelas* [] that remains good law, as we would in any event, since the BIA's determination that IIRIRA overruled *Fleuti* was reasonable." *Centurion*, 860 F.3d at 72 n.1.[4] Because Gomez committed both relevant offenses after IIRIRA went into effect in April 1997, *see I.N.S. v. St. Cyr*, 533 U.S. 289, 315 (2001); *Centurion*, 860 F.3d at 77-78, he is subject to 8 U.S.C. § 1101(a)(13)(C)(v). The BIA correctly concluded that Gomez was properly treated as seeking admission when he arrived in the United States in 2015.

---

[4] Every other Circuit to have considered whether IIRIRA overruled the *Fleuti* doctrine has also concluded that it did. *See, e.g., Othi*, 734 F.3d at 266-67; *De Vega v. Gonzales*, 503 F.3d 45, 48 (1st Cir. 2007); *Camins v. Gonzales*, 500 F.3d 872, 879-81 (9th Cir. 2007); *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 501-02 (5th Cir. 2006); *Morales-Morales v. Ashcroft*, 384 F.3d 418, 424 (7th Cir. 2004); *Tineo v. Ashcroft*, 350 F.3d 382, 396-97 (3d Cir. 2003).

**II.    The stop-time rule prevented Gomez from accruing seven years of continuous residency in the United States.**

In his second petition for review, Gomez contends that the BIA erred in denying his motion to reopen. "[A] motion to reopen asks that the proceedings be reopened for new evidence and a new decision, usually after an evidentiary hearing." *Ke Zhen Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 90 (2d Cir. 2001). According to the pertinent regulation, a "motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). "[M]otions to reopen are generally disfavored in light of the strong public interest in the finality of removal orders." *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168 (2d Cir. 2008) (internal quotation marks and citation omitted). A "failure to establish a *prima facie* case for the underlying substantive relief sought [is a] proper ground[] on which the BIA may deny the motion to reopen." *Alam v. Gonzales*, 438 F.3d 184, 187 (2d Cir. 2006); *see Singh v. Mukasey*, 536 F.3d 149, 155 (2d Cir. 2008).[5]

---

[5] We review the denial of a motion to reopen for abuse of discretion, which "may be found in those circumstances where the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say,

In denying Gomez's motion to reopen, the BIA concluded that he had not demonstrated *prima facie* eligibility for cancellation of removal. The Board acknowledged that Gomez's aggravated felony conviction had been vacated, but concluded that he was still not eligible for cancellation of removal because his 1999 marijuana conviction prevented him from accruing seven years of continuous residency in the United States. On appeal, Gomez contends that the BIA abused its discretion by failing to explain its decision and otherwise acting arbitrarily and capriciously.

The INA provides in relevant part that the "Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a). "[T]he relief of cancellation of removal is both discretionary and prospective in nature." *In re Perez*, 22 I. & N. Dec. 689, 691 (B.I.A. 1999) (en banc).

where the Board has acted in an arbitrary or capricious manner." *Indradjaja v. Holder*, 737 F.3d 212, 218 (2d Cir. 2013) (internal quotation marks omitted). "Underlying questions of law are reviewed *de novo*." *Ri Kai Lin v. Bureau of Citizenship & Immigr. Servs.*, 514 F.3d 251, 254 (2d Cir. 2008).

At issue in this petition is the second requirement, mandating that, to be eligible for cancellation of removal, a lawful permanent resident must accrue seven years of continuous residency in the United States. Regarding that requirement, the INA further provides, as relevant here, that:

> any period of continuous residence . . . in the United States shall be deemed to end (A) . . . when the alien is served a notice to appear . . . , or (B) when the alien has committed an offense referred to in [§] 1182(a)(2) of this title that renders the alien inadmissible to the United States under [§] 1182(a)(2) of this title or removable from the United States under [§] 1227(a)(2) [or (a)(4)] of this title, whichever is earliest.

8 U.S.C. § 1229b(d)(1). That provision is known as the "stop-time rule" because it prevents a lawful permanent resident from accruing sufficient continuous residency to be eligible for cancellation of removal. *See Guamanrrigra v. Holder*, 670 F.3d 404, 409 (2d Cir. 2012). Because Gomez was deemed inadmissible to the United States under § 1182(a)(2)(A)(i)(II), we are concerned only with the requirements for inadmissibility under that section.[6] Section 1182(a)(2) is a

---

[6] Gomez also contends that, because the 1999 marijuana conviction did not render him deportable under 8 U.S.C. § 1227(a)(2)(B)(i), his commission of the offense could not have triggered the stop-time rule. Whether Gomez was *deportable*, however, is irrelevant, since Gomez was rendered *inadmissible* based on the 1999 offense, which is sufficient to meet the stop-time rule's requirements.

lengthy provision describing many circumstances in which non-citizens are inadmissible to the United States. As relevant here, the statute provides that:

> any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance (as defined in [§] 802 of Title 21), is inadmissible.

*Id.* § 1182(a)(2)(A)(i)(II).

Courts have described the stop-time rule as having two requirements that must be satisfied in order to halt a lawful permanent resident's continuous residency in the United States. *See, e.g.*, *Calix v. Lynch*, 784 F.3d 1000, 1008 (5th Cir. 2015). First, the lawful permanent resident must commit a qualifying crime listed in § 1182(a)(2).[7] Gomez's 1999 marijuana conviction constitutes such an offense because it was a crime involving a controlled substance. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II). Second, that offense must render the lawful permanent resident inadmissible; that is, a person is only *inadmissible* due to the commission

---

[7] Time is also stopped when the non-citizen is served a notice to appear, 8 U.S.C. § 1229b(d)(1)(A), but that alternative way of triggering the stop-time rule is not at issue in this appeal because the stop-time rule halts the alien's accretion of time in the United States upon the occurrence of whichever alternative occurs first, *see id.* § 1229b(d)(1). Gomez was not served with a notice to appear until June 2015, long after he had lived in the United States for seven years.

of a qualifying drug offense if the person is "convicted of, or . . . admits having committed, or . . . admits committing acts which constitute the essential elements of" the offense, *id.* § 1182(a)(2)(A)(i), and is not eligible for other relief from inadmissibility.[8] *See Calix*, 784 F.3d at 1008. Gomez was convicted of the marijuana offense after pleading guilty in 1999 and applied for admission to the United States in 2015.

The parties dispute precisely when Gomez was rendered inadmissible for purposes of the stop-time rule, 8 U.S.C. § 1229b(d)(1)(B). The government contends that Gomez was rendered inadmissible upon his conviction for marijuana possession in 1999, *see* 8 U.S.C. § 1182(a)(2)(A)(i), while Gomez claims that he was not rendered inadmissible until he applied for admission in 2015.[9]

---

[8] As explained above, 8 U.S.C. § 1182(a)(2) is a lengthy provision governing numerous circumstances in which a non-citizen is inadmissible to the United States. It also includes criteria for various types of relief from inadmissibility. We do not attempt to catalogue all of those circumstances here, nor should this discussion be seen as an exhaustive analysis of the possible ways that § 1182(a)(2) might render a person inadmissible for purposes of the stop-time rule (or for any other purpose). Instead, we focus only on the provisions that are essential to resolving Gomez's appeal.

[9] Gomez did not raise before the BIA the precise argument that he advances in this appeal, although he discussed the issue with the IJ during a September 2015 hearing. In his motion to reopen, he argued generally that he was "*prima facie* eligible for [c]ancellation of [r]emoval" after the 2010 conviction was vacated.

15

Although the "question [appears] difficult because the concept of inadmissibility is generally married to situations in which an alien is actually seeking admission to the United States," *Calix*, 784 F.3d at 1004, precedent addressing the issue of when a person is rendered inadmissible has sided with the government. In those cases, other Circuits and the BIA have concluded that a lawful permanent resident need not apply for admission to be rendered inadmissible under the stop-time rule. *See, e.g.*, *Calix*, 784 F.3d at 1008-09; *Ardon v. Attorney Gen. of U.S.*, 449 F. App'x 116, 118 (3d Cir. 2011); *In re Jurado-Delgado*, 24 I. & N. Dec. 29, 30-31 (B.I.A. 2006).

Those rulings are consistent with the relevant language of § 1182(a)(2), which provides that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance . . . *is inadmissible*." 8 U.S.C.

CAR 22 (Gomez's motion to reopen). That claim prompted the BIA to consider the other requirements for cancellation of removal, including the continuous residency requirement at issue here. Because Gomez raised the issue of his eligibility for cancellation of removal, and the BIA ruled on the issue of the stop-time provision that we address in this appeal, we reject the government's perfunctory argument that Gomez failed to exhaust the issue before the BIA. *See Xian Tuan Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 296-97 (2d Cir. 2006).

§ 1182(a)(2)(A)(i)(II) (emphasis added). In other words, the statute appears to indicate that a non-citizen becomes inadmissible when he is convicted of or admits committing a qualifying drug offense. According to the *Oxford English Dictionary* (3d ed. 2011), "inadmissible" means not admissible, and "admissible" means "*[c]apable of being or having the right to be admitted* to a place." (Emphasis added.) The plain language of the statute thus suggests that one who has been convicted of a controlled substance offense is no longer capable of being admitted to the United States, should he ever apply; it is not necessary to apply and be refused admission for one to be, in fact and in law, not *capable of being admitted*. The BIA has adopted that interpretation, concluding that an alien is rendered inadmissible for purposes of § 1229b(d)(1)(B) when the alien "become[s] inadmissible . . . , *i.e.*, [is] potentially removable if so charged." *In re Jurado-Delgado*, 24 I. & N. Dec. at 31 (internal quotation marks omitted). Since the stop-time rule incorporates the provisions governing inadmissibility in § 1182(a)(2), it appears that Gomez was rendered inadmissible when he was convicted of the marijuana offense in 1999, although he did not apply for

admission until 2015.[10]

We need not definitively decide *when* Gomez was rendered inadmissible, however. Both parties agree that he was in fact rendered inadmissible—either in 1999, when he was convicted of the offense, or in 2015, when he applied for and was denied admission. In arguing that he was not rendered inadmissible until 2015, Gomez further claims that the date on which he was rendered inadmissible must be used to calculate his period of residency. That is, in his view, time was

_____

[10] At oral argument, Gomez also relied on a case not cited in his brief: *Reyes v. Holder*, 714 F.3d 731 (2d Cir. 2013). In *Reyes*, we interpreted 8 C.F.R. § 1240.66(b)(1), a regulatory provision promulgated pursuant to the Nicaraguan Adjustment and Central American Relief Act of 1997, Pub. L. No. 105-100, 111 Stat. 2193. *Reyes*, 714 F.3d at 732. Although the title of that regulation refers to "cancellation of removal," its text differs substantially from the text of the stop-time rule, 8 U.S.C. § 1229b(d)(1). For example, 8 C.F.R. § 1240.66(b)(1) provides that a person may be eligible for "special rule cancellation of removal" if the person is "not inadmissible under [§ 1182(a)(2)] . . . or deportable." In contrast, the stop-time rule provides that a person stops accruing continuous residency in the United States when he "has committed an offense . . . that renders [him] inadmissible to the United States . . . or removable from the United States." 8 U.S.C. § 1229b(d)(1)(B). In *Reyes*, we held that a non-citizen could not be deemed "deportable" under that regulation if the person had not been admitted to the United States. 714 F.3d at 732-33. Gomez contends that we should extend *Reyes* and conclude here that a non-citizen could not be rendered inadmissible until he sought an admission to the United States. Whatever limited relevance *Reyes* might have in discerning when a lawful permanent resident is rendered inadmissible under the stop-time rule—and we do not suggest that it has any—we need not decide that issue because there is no dispute that the 1999 marijuana conviction did ultimately render Gomez inadmissible.

18

not stopped until 2015. Although we have not squarely addressed Gomez's precise argument, our precedent requires us to reject it.

We have repeatedly held "that the stop-time rule is triggered on the date an alien commits a predicate offense," not on the date of his subsequent conviction. *Baraket v. Holder*, 632 F.3d 56, 59 (2d Cir. 2011). We have admitted no ambiguity on this point, explaining that "it is the date of the commission of the offense—not the date of the subsequent conviction—that matters for purposes of computing an alien's period of continuous residence." *Martinez v. I.N.S.*, 523 F.3d 365, 369 (2d Cir. 2008). That reading "best comports with a natural reading of the statute[,] . . . [which] strongly suggests that it is the commission of the acts that constitute the offense, not conviction for the offense, that controls." *Baraket*, 632 F.3d at 59-60 (citing *In re Perez*, 22 I. & N. Dec. at 693); *see Centurion*, 860 F.3d at 75 (collecting cases); *see also Santos-Reyes v. Attorney Gen. of U.S.*, 660 F.3d 196, 199 (3d Cir. 2011) ("All points of reference lead to the conclusion that the phrase 'has committed' in [§] 1229b(d)(1) means the stop-time rule is triggered . . . by an alien's criminal conduct occurring on a particular date before the end of the seventh year of continuous residence."). We have never held that the date on which a lawful permanent resident is rendered inadmissible is relevant for

calculating his continued residency in the United States. Just as we said in

*Baraket*, 632 F.3d at 59-60, the language of the statute strongly supports our

reading: § 1229b(d)(1) provides that an alien's "period of continuous residence

. . . shall be deemed to end . . . when the alien *has committed* an offense referred to

in [§] 1182(a)(2)." (Emphasis added.) To be sure, the offense must render the non-

citizen inadmissible, but the *date* on which he is rendered inadmissible is of no

consequence to determining the date as of which his period of continuous

residence is deemed to have ended.

The BIA (sitting en banc) has reached the same conclusion about the

relationship between the date of the commission of an offense and the separate

requirement that the offense "renders the alien inadmissible," 8 U.S.C.

§ 1229b(d)(1)(B), albeit in a case principally concerning the retroactivity of the

stop-time rule. There, the BIA explained that the "'renders' clause does not

impose a separate temporal requirement. Rather, it is a restrictive clause which

modifies the word 'offense' by limiting and defining the types of offenses which

cut off the accrual of further time as of the date of their commission." *In re Perez*,

20

22 I. & N. Dec. at 693.[11] In other words, no matter when a person is "rendered inadmissible" under § 1229b(d)(1)(B), the date of his *commission* of a qualifying offense "is the critical point in time when calculating the statutorily required period" of residency, *In re Perez*, 22 I. & N. Dec. at 693. The BIA emphasized that the "statute does not identify the date that the final step for inadmissibility or removability occurs as the date that the further accrual of time terminates." *Id.* "To the contrary, it clearly defines the terminating point" as the time when the person committed the offense. *Id.*[12]

---

[11] We have declined to defer to the portion of the BIA's opinion in *Perez* discussing retroactivity because the issue of retroactivity "does not concern the sort of statutory gap that Congress has designated the BIA to fill, nor a matter in which the BIA has particular expertise." *Martinez*, 523 F.3d at 372-73. We have never disapproved of its general discussion of the triggering date for the stop-time rule, however. Indeed, we cited that portion of *Perez* approvingly in *Baraket*, 632 F.3d at 59-60. That aspect of the BIA's discussion relates to the interpretation of the INA, a subject that is well within the expertise of the BIA to which we normally defer.

[12] We note that the dissenters in *Perez* sought to read the relevant date stopping time as the date that the "alien is rendered inadmissible or removable," *In re Perez*, 22 I. & N. Dec. at 699, which is the same argument that Gomez advances here. In rejecting that view, the BIA majority noted that using the time at which the non-citizen was "rendered inadmissible" as the "cutoff date . . . would leave no role for the 'has committed' language" in the statute, and would therefore be contrary to the statutory text. *Id.*; *see id*. at 702-03 (Guendelsberger, Board Member, dissenting).

The BIA's reasoning is consistent with our cases holding that the date of the commission of the qualifying offense controls the calculation of a person's continuous residency in the United States. *See, e.g.*, *Baraket*, 632 F.3d at 59-60. In other words, the stop-time "rule is unconcerned with the particular events that give rise to the alien's removal; indeed, it operates the same way no matter what brought about the removal." *Jaghoori v. Holder*, 772 F.3d 764, 773 (4th Cir. 2014); *see In re Jurado-Delgado*, 24 I. & N. Dec. at 30-31 (holding that a lawful permanent resident was rendered inadmissible even though he was not charged as inadmissible based on the crime that precluded him from accruing seven years of continuous residence). Similarly, the Fifth Circuit acknowledged that the date of the commission of an offense controls the computation of residency, holding that an alien's "continuous residence ended . . . when he committed an offense that rendered him inadmissible"; in other words, "[h]is accrual of continuous residence was halted as of the date he committed [the] offense." *Calix*, 784 F.3d at 1011, 1012.[13]

---

[13] At issue in *Calix* was whether the petitioner's conviction of marijuana possession rendered him inadmissible to the United States even though he did not apply for readmission. *Calix*, 784 F.3d at 1002, 1004. Calix was deportable based on a cocaine offense that he committed after he had been in the United States for the required seven years, *id.* at 1005 n.3; thus, his eligibility for

The plain language of the statute and the cases interpreting it therefore demonstrate that, even assuming that the "renders . . . inadmissible" clause contains a separate requirement that must be satisfied in order to halt a lawful permanent resident's continuous residency in the United States, and even if that requirement is not satisfied (as Gomez contends) until the alien applies for admission, once inadmissibility is determined, it is the date of the commission of the offense that controls our calculation of the period of residency. "The language chosen by Congress [thus] directs that an alien cease accruing the time required to establish eligibility for the relief of cancellation of removal at the point where he or she abuses the hospitality of this country by committing one of the designated offenses, so long as the offense subsequently renders the alien inadmissible or removable." *In re Perez*, 22 I. & N. Dec. at 700; *see Reid v. Gonzales*, 478 F.3d 510, 512 (2d Cir. 2007). We agree with the BIA that it "would strain our reading of [§ 1229b(d)(1)] to interpret the statute as permitting any date to be

cancellation of removal turned on the consequences of his earlier marijuana conviction and whether that conviction rendered him inadmissible for purposes of the stop-time rule. The court concluded that it did, because Calix could have been charged as inadmissible based on the marijuana offense had he sought admission to the United States at that time, and therefore the commission of the offense prevented him from accruing seven years of continued residency. *Id.* at 1012.

used for calculating the period of continuous residence . . . other than the date the offense was committed." *In re Perez*, 22 I. & N. Dec. at 693; *see Baraket*, 632 F.3d at 57, 59.

In short, when a non-citizen is rendered inadmissible—by a conviction, admission of the criminal conduct, or through some other means—the stop-time rule may make him ineligible for cancellation of removal, if, as of the date of his *commission* of the underlying offense, he had not yet resided in the United States continuously for seven years. To state it another way: as long as a qualifying offense later *does* render the non-citizen inadmissible under 8 U.S.C. § 1182(a)(2), the date of the *commission* of the offense governs the computation of a lawful permanent resident's continuous residency in the United States. Accordingly, even if Gomez is correct that he was not rendered inadmissible until 2015—a position that we find dubious—his commission of the 1999 offense would still be the operative date for purposes of calculating his period of residency in the United States. We reject Gomez's attempt to transform the "'that renders' clause . . . [into] a separate temporal requirement," because such a reading "would result in a conflict with the temporal requirement already in the plain language of the statute, namely, the provision that time is stopped once an alien 'has

24

committed' a relevant offense." *Baraket*, 632 F.3d at 60 (internal quotation marks omitted).

The BIA therefore did not abuse its discretion in denying Gomez's motion to reopen because he did not demonstrate *prima facie* eligibility for cancellation of removal. Gomez entered the United States as a lawful permanent resident in 1997 and was convicted of marijuana possession in 1999. Because his period of continuous residence is deemed to have ended as of the date of his commission of that offense, he thus accrued fewer than seven years of continuous residency in the United States. Gomez's attempt to characterize the BIA's denial of his motion to reopen as impermissibly "summary and conclusory," Pet. Br. 22, is unavailing. The BIA considered whether the 1999 marijuana offense triggered the stop-time rule and provided adequate, legally correct reasons for concluding that it did.

## CONCLUSION

For the foregoing reasons, the consolidated petitions for review are DENIED. Since we have completed our review, the pending motion for stay of removal is DENIED as moot.

25